UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RANDY WILLIAMS,

                    Plaintiff,

      v.

MICHAEL A. HILL, et al.,

                  Defendants.

_____

**DECISION AND ORDER**

6:22-CV-06093 EAW

## INTRODUCTION

*Pro se* plaintiff Randy Williams ("Plaintiff") asserts claims of retaliation and due process violations pursuant to 42 U.S.C. § 1983 against defendants Michael A. Hill ("Defendant Hill"), Gary A. Spengler ("Defendant Spengler"), Anthony Rodriguez ("Defendant Rodriguez"), and Daniel T. Kaczmarek ("Defendant Kaczmarek") (collectively, "Defendants"). (Dkt. 9). Pending before the Court is Defendants' motion for summary judgment (Dkt. 43) and Plaintiff's motion for a temporary restraining order and preliminary injunction (Dkt. 51). For the following reasons, Defendants' motion for summary judgment is granted in part and denied in part, and Plaintiff's motion for a temporary restraining order and preliminary injunction is denied.

## BACKGROUND

### I.    Factual Background

The following facts are taken from Defendants' Local Rule 56 Statement of Facts (Dkt. 43-2), Plaintiff's amended complaint (Dkt. 9), and the exhibits and declarations submitted by the parties.[1]  The Court has noted relevant factual disputes.

Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") who at the time of the events at issue in this action was housed at Attica Correctional Facility ("Attica").  (Dkt. 9 at 1, 7; Dkt. 43-2 at ¶ 6; Dkt. 50-2 at ¶ 3).  Plaintiff was an elected Incarcerated Individual Liaison

---

[1]    Plaintiff failed to submit a response to Defendants' Statement of Undisputed Facts as required by Local Rule of Civil Procedure 56(a)(2).  Local Rule 56(a)(2) requires a party opposing a motion for summary judgment to submit "a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs . . . containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried."  Local Rule 56(a)(2) further provides that "[e]ach numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."  *Id.*; *see also* Fed. R. Civ. P. 56(e)(2) (when a party fails to properly support an assertion of fact or fails to address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion).  Plaintiff's opposition fails to comply with these requirements and therefore affords the Court discretion to deem Defendants' Statement admitted for the purposes of the motion for summary judgment.  Nonetheless, the Court has considered the allegations in Plaintiff's declaration (Dkt. 50-2 at 2-8) and in his verified amended complaint (*see* Dkt. 9 at 13) in opposition to the summary judgment motion.  *See Zielinksi v. Annucci*, No. 9:17-CV-1087 (GTS/CFH), 2020 WL 7074845, at *7 (N.D.N.Y. Nov. 12, 2020) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist. . . .")); *see also Brandon v. Kinter*, 938 F.3d 21, 27 n.5 (2d Cir. 2019) ("Brandon's Amended Complaint was sworn under penalty of perjury.  Therefore, his allegations in the complaint can be considered as evidence for summary judgment purposes.").

Committee ("ILC") member at Attica, a committee tasked with addressing concerns of the inmate population. (Dkt. 9 at 7; Dkt. 50-2 at ¶¶ 4-5).

Plaintiff alleges that on or about October 8, 2021, correctional officers searched every incarcerated individual's cell after a prisoner assaulted a staff member. (Dkt. 9 at 7; Dkt. 50-2 at ¶ 6). Plaintiff contends that during the search, the correctional employees intentionally and maliciously destroyed and confiscated the inmates' property. (Dkt. 9 at 7; Dkt. 50-2 at ¶ 6). Plaintiff alleges that he and other inmates were forced to strip down to their underwear and enter the open gallery in front of other individuals, including female staff. (Dkt. 9 at 7; Dkt. 50-2 at ¶ 6).

About six days later, on or about October 14, 2021, Plaintiff attended a regularly scheduled ILC meeting in the school building at Attica, at which Plaintiff and Donald White, the ILC President, were the only members in attendance. (Dkt. 9 at 8; Dkt. 50-2 at ¶ 8). During that meeting, Plaintiff shared with Donald White two typed letters that were addressed to two executive level DOCCS' officials, Deputy Commissioner James O'Gorman and Executive Deputy Commissioner Daniel Martuscello, concerning the events of October 8, 2021, and specifically criticizing the conduct of Attica Seargent Charles Guzdek. (Dkt. 9 at 8; Dkt. 50-2 at ¶ 9; Dkt. 43-2 at ¶ 8; Dkt. 43-10 at 6-9). Plaintiff and Donald White requested that an Attica office assistant, E. Obermiller, make copies of the letters. (Dkt. 9 at 8-9; Dkt. 50-2 at ¶ 13; Dkt. 43-2 at ¶ 7). While Plaintiff alleges that the request for copies was consistent with normal procedures (Dkt. 50-2 at ¶ 13), Defendants contend that Plaintiff and Donald White were attempting to surreptitiously have Ms. Obermiller copy the documents without her realizing their contents (Dkt. 43-2 at

- 3 -

¶ 9).  Ms. Obermiller reviewed the letters and retained a copy, which she provided to the Deputy Superintendent for Security.  (*Id.*).

Plaintiff alleges that later the same day, he was transported to the Special Housing Unit ("SHU") and told by the transporting officers that the transfer stemmed from something he did in the school building and that the order came from someone in the administration.  (Dkt. 9 at 9; Dkt. 50-2 at ¶ 19).  Donald White, who was also taken to the SHU on October 14, 2021, submitted a declaration on Plaintiff's behalf wherein he states that he too was advised by transporting officers that he was being transported to the SHU for having attempted to write letters to the Commissioner.  (Dkt. 50-2 at 12).

Plaintiff alleges that Defendant Kaczmarek was the assigned watch commander on October 14, 2021, and that Defendant Kaczmarek signed the logbook authorizing Plaintiff's placement in the SHU on that date.  (Dkt. 9 at 10; Dkt. 50-1 at 16).  Defendant Kaczmarek denies having any involvement in Plaintiff's placement in the SHU.  (Dkt. 43-5 at ¶ 9 ("I did not investigate the incident involving OA Obermiller, I did not prepare the misbehavior report or have any involvement in the creation of the misbehavior report.  I did not order that Williams be placed in the Special Housing Unit pending the completion of his Tier III Disciplinary Hearing.")).

Defendant Spengler, the Acting Captain and area supervisor, investigated the incident and prepared a misbehavior report dated October 16, 2021.  (Dkt. 9 at 10; Dkt. 43-2 at ¶ 13; Dkt. 43-4 at ¶ 10; Dkt. 50-2 at ¶ 24).  The misbehavior report charged Plaintiff with violating the following DOCCS' rules: 104.12 Demonstration, 107.20 False Statements or Information, and 114.10 Smuggling.  (Dkt. 9 at 10; Dkt. 43-2 at ¶ 13; Dkt.

43-4 at ¶ 10; Dkt. 50-2 at ¶ 24).  Defendant Spengler states in his declaration filed in support of Defendants' motion for summary judgment that he "ordered [Plaintiff] to be transferred to the Special Housing Unit on October 16, 2021, the date upon which I submitted the Misbehavior Report." (Dkt. 43-4 at ¶ 20).

A Tier III Hearing was conducted by Defendant Hill, the Deputy Superintendent of Programs at Attica, on October 20, 2021.  (Dkt. 9 at 10; Dkt. 43-2 at ¶¶ 18-19; Dkt. 43-6 at ¶ 8).  At the hearing, Defendant Hill called Defendant Spengler to testify.  (Dkt. 9 at 10-11; Dkt. 43-6 at ¶ 20).  Defendant Spengler testified that the day after Ms. Obermiller forwarded the letters to his office, he conducted an investigation, which included: reviewing memos prepared by Ms. Obermiller and correctional officer Ziolowski, watching and listening to video and audio of the facility monitoring system from October 14, 2021, and conducting interviews and cell frisks.  (Dkt. 43-11 at 15).  Defendant Spengler further testified that the video and audio recordings revealed conversations between Plaintiff and Donald White wherein they discussed trying to hide the letters from Ms. Obermiller and included comments from Plaintiff indicating that if Ms. Obermiller read the letters, that she would not make the copies and he did not want her to read them.  (Dkt. 43-4 at ¶ 16; Dkt. 43-11 at 16).  Plaintiff requested that Defendant Hill call Deputy Commissioner O'Gorman and Executive Deputy Commissioner Martuscello as witnesses to testify at the hearing, but Defendant Hill denied Plaintiff's request.  (Dkt. 43-2 at ¶¶ 21, 22; Dkt. 50-2 at ¶ 26).  Defendant Hill found Plaintiff guilty of all three charges, and Plaintiff was placed in SHU for 90 days with the loss of packages, commissary, recreation and phone.  (Dkt. 9 at 11; Dkt. 43-2 at ¶¶ 25-26; Dkt. 50-2 at ¶¶ 25-26).

- 5 -

On or about October 22, 2021, Plaintiff submitted an appeal of the hearing determination. (Dkt. 9 at 11; Dkt. 43-2 at ¶ 27; Dkt. 50-2 at ¶ 29). An affirmance of the determination, issued on November 19, 2021, is stamped with the signature of Defendant Rodriguez, the Director of the DOCCS Office of Special Housing and Incarcerated Individual Disciplinary Programs, but Defendant Rodriguez denies personally conducting the review. (Dkt. 9 at 11; Dkt. 43-2 at ¶ 27; Dkt. 43-3 at ¶ 15).

On or about November 30, 2021, Plaintiff commenced an Article 78 proceeding seeking review of the Tier III hearing decision in the Supreme Court, Appellate Division, Third Department. (Dkt. 9 at 12; Dkt. 43-2 at ¶ 28). On or about December 8, 2022, the Third Department issued a determination annulling the charge of demonstration against Plaintiff but confirming the remaining charges. (Dkt. 9 at 12; Dkt. 43-2 at ¶ 28; Dkt. 43-13).

Plaintiff seeks both compensatory and punitive damages, and expungement of all references from this incident from his institutional records. (Dkt. 9 at 13).

## II.    Procedural Background

Plaintiff filed his complaint on February 24, 2022, and an amended complaint on January 20, 2023. (Dkt. 1; Dkt. 9). Plaintiff also filed a motion to proceed *in forma pauperis*, which the Court granted. (Dkt. 2; Dkt. 6).

The Court screened Plaintiff's complaint and amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and held that Plaintiff's First Amendment retaliation claims against Defendants Hill, Kaczmarek, Spengler, and Rodriguez, and Plaintiff's Fourteenth Amendment Due Process claims against Defendants Hill, Rodriguez, and

Spengler were sufficient to survive initial review and proceed to service.  (Dkt. 6 at 1-2; Dkt. 10 at 2).

On October 16, 2024, Defendants filed their motion for summary judgment.  (Dkt. 43).  Plaintiff filed a response on November 14, 2024.  (Dkt. 50).

On November 20, 2024, Plaintiff filed his motion for a temporary restraining order and preliminary injunction.  (Dkt. 51).  Defendants responded on December 12, 2024. (Dkt. 53).

## DISCUSSION

### I.    Defendants' Motion for Summary Judgment

Defendants advance several arguments in support of their motion for summary judgment: (1) Defendant Kaczmarek and Defendant Rodriguez were not personally involved in the disciplinary process against Plaintiff; (2) Defendants did not retaliate against Plaintiff; (3) Defendant Hill, Defendant Rodriguez, and Defendant Spengler did not violate Plaintiff's right to due process; and (4) Defendants are entitled to qualified immunity.  Following a review of the applicable standards, the Court will address each argument.

### A.    Legal Standards

#### 1.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in

the light most favorable to the nonmoving party, it finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In addition, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that

they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks and citation omitted). Despite this liberal approach, allegations unsupported by admissible evidence "do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

### 2.    <u>Section 1983</u>

"To succeed on a section 1983 claim, Plaintiff must prove two essential elements: (1) defendants [] acted under color of state law; and (2) as a result of their actions, Plaintiff suffered a denial of his federal statutory or constitutional rights or privileges." *Sampson v. City of Schenectady*, 160 F. Supp. 2d 336, 342 (N.D.N.Y. 2001); *see Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

## B.    <u>Personal Involvement</u>

Defendant Rodriguez and Defendant Kaczmarek contend that they did not have any personal involvement in the actions taken against Plaintiff and are therefore entitled to summary judgment.

To establish liability against an official under § 1983, a plaintiff must show the "personal involvement of defendants in alleged constitutional deprivations." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). The theory of *respondeat superior* is unavailable in a § 1983 action. *Patterson*

*v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004). "Instead, a plaintiff must . . . prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

As to Defendant Rodriguez, the Court agrees that Plaintiff has produced no evidence that Defendant Rodriguez was personally involved with the matters alleged in Plaintiff's complaint. In Defendant Rodriguez's role as the Director of the Special Housing and Inmate Disciplinary Program, he led the office designated to review all Tier III hearings. The form reflecting the affirmance of the hearing determination bears Defendant Rodriguez's stamped signature (Dkt. 43-9), although Defendant Rodriguez avers that the form is automatically generated and that he had no personal involvement in the review of Plaintiff's hearing (Dkt. 43-3 at ¶¶ 14, 16). Other than sheer speculation and conjecture, Plaintiff provides no evidence to create a genuine issue of material fact as to Defendant Rodriguez's personal involvement in his appeal. Without any evidence that Defendant Rodriguez did anything more than (at most) rubber-stamp the appeal decision, his conduct does not constitute sufficient personal involvement to sustain a § 1983 claim. *See Keyes v. Venettozzi*, No. 9:18-CV-0372 (GTS/DJS), 2022 WL 991402, at *19 (N.D.N.Y. Mar. 31, 2022) ("In general, the mere fact that a supervisory official affirmed the result of a disciplinary hearing will not suffice to establish that official's personal involvement in an alleged constitutional violation. . . . However, a supervisory official will be found to have been personally involved if he or she proactively participated in reviewing the administrative appeals as opposed to merely rubber-stamping the results." (quotations and

citations omitted)); *Hendrix v. Annucci*, No. 9:20-CV-0743 (GTS/TWD), 2021 WL 4405977, at \*15 (N.D.N.Y. Sept. 27, 2021) ("Plaintiff fails to allege specific factual instances as to Defendant Annucci's personal involvement in the periodic Ad Seg review process. . . .   Supervisory prison officials who merely review and affirm outcomes of prisoner disciplinary hearings are not personally involved in the disciplinary hearing itself."); *Caimite v. Rodriguez*, No. 9:17-CV-0919 (GLS/CFH), 2020 WL 6530780, at \*9 (N.D.N.Y. Apr. 9, 2020) ("In general, the mere fact that a supervisory official affirmed the result of a disciplinary hearing will not suffice to establish that official's personal involvement in an alleged constitutional violation, which is a prerequisite to liability under § 1983." (citing *Collins v. Ferguson*, 804 F. Supp. 2d 134, 140 (W.D.N.Y. 2011))), *report and recommendation adopted*, No. 9:17-CV-0919 (GLS/CFH), 2020 WL 5651672 (N.D.N.Y. Sept. 23, 2020).  There being no evidence before the Court to reasonably support a conclusion that Defendant Rodriguez had any active participation in Plaintiff's administrative appeals, Defendants' motion for summary judgment with respect to Defendant Rodriguez is granted and the claims against him dismissed.

That said, the same is not true for Defendant Kaczmarek.  Although Defendant Kaczmarek denies involvement in any matters relating to the incidents at issue in Plaintiff's complaint, including a declaration stating that he "did not order that [Plaintiff] be placed in [SHU] pending the completion of his Tier III Disciplinary Hearing," (Dkt. 43-5 at ¶ 9), a logbook entry suggests otherwise.  Specifically, the logbook entry from October 14, 2021, which documents Plaintiff's SHU admission on that date, indicates that Defendant Kaczmarek was the authorizing lieutenant and watch commander who gave the direction

for Plaintiff to be placed in the SHU. (Dkt. 50-1 at 16). Not only does this document appear to contradict Defendant Kaczmarek's declaration, but it also contradicts the timeline of events sworn to by Defendant Spengler, who maintained that Plaintiff was sent to SHU two days later after the investigation. As a result of these factual discrepancies, the Court cannot conclude as a matter of law that Defendant Kaczmarek lacked any involvement in the matters raised by Plaintiff's claims. The portion of Defendants' motion for summary judgment asserted on the basis of a lack of personal involvement by Defendant Kaczmarek is accordingly denied.

## C.    <u>Plaintiff's First Amendment Retaliation Claims</u>

Prison officials may not retaliate against prisoners for exercising their constitutional rights. *See generally Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). To make out a § 1983 retaliation claim, a prisoner must present allegations that (1) he engaged in constitutionally protected speech or conduct, (2) the defendant took adverse action against him, and (3) there was a causal connection between the protected speech or conduct and the adverse action. *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).

Courts recognize that retaliation claims by prisoners are "prone to abuse" since prisoners might claim retaliation based on any decision they dislike. *Vazquez v. City of New York*, No. 1:21-CV-01573 (PAE)(VF), 2022 WL 2704763, at *13 (S.D.N.Y. June 17, 2022) ("A prisoner's claims of retaliation must be examined with particular care, however, because they are prone to abuse since prisoners can claim retaliation for every decision they dislike.") (quotation omitted), *adopted*, 2022 WL 2704469 (S.D.N.Y. July 11, 2022).

"Accordingly, even though [p]risoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right, courts must examine a prisoner's retaliation claim with skepticism and particular care." *Speaks v. Saeed*, No. 14-CV-06826 (JMA)(AYS), 2022 WL 541767, at *7 (E.D.N.Y. Feb. 23, 2022) (quotation and citation omitted).

Defendants concede for purposes of the motion that Plaintiff can satisfy the first element that he engaged in constitutionally protected speech or conduct, s*ee Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) ("filing or voicing grievances on behalf of a prison population as a member of an inmate grievance body, such as the ILC," constitutes constitutionally protected activity), but contend that he cannot satisfy the other two prongs as a matter of law.  The Court disagrees.

"To be an 'adverse action,' retaliatory conduct must be the type that would deter 'a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'"  *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)).  Courts must "look to the specific circumstances in which retaliation claims arise, 'bearing in mind that prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse.'"  *Walker v. Senecal*, 130 F.4th 291, 298 (2d Cir. 2025) (quoting *Hayes*, 976 F.3d at 272)).  Plaintiff's confinement in SHU is sufficient to constitute adverse action for purposes of the instant motion.  *See Gunn v. Malani*, No. 20-CV-2681 (KMK), 2023 WL 2664805, at *7 (S.D.N.Y. Mar. 28, 2023) ("[c]onfining a prisoner to keeplock is sufficient

to establish an adverse action"); *Vidal v. Valentin*, No. 16-CV-5745, 2019 WL 3219442, at *8 (S.D.N.Y. July 17, 2019) ("Confinement in the SHU is an adverse action."); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 373 (N.D.N.Y. May 24, 2010) (concluding that misbehavior report that resulted in SHU confinement satisfied adverse action).

As for the third element of a retaliation claim—a causal connection—a fact-finder may infer an improper or retaliatory motive in the adverse action from facts that demonstrate: "(1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; [or] (4) statements by the defendant regarding his motive for disciplining the plaintiff." *Shariff v. Poole*, 689 F. Supp. 2d 470, 479 (W.D.N.Y. 2010). But the Second Circuit has "repeatedly held that temporal proximity alone is insufficient for a prisoner's retaliation claim to survive summary judgment." *Morrow v. Bauersfeld*, No. 21-2928-CV, 2022 WL 17097590, at *2 (2d Cir. Nov. 22, 2022) (collecting cases); *see also, Williams v. King*, 763 F. App'x 36, 38-39 (2d Cir. 2019) ("The only evidence demonstrating a retaliatory motive is temporal proximity which, alone, is insufficient to defeat summary judgment.").

Defendants argue that Plaintiff cannot establish the third prong because Defendants "only took action which they were ordered to take, by investigating the allegations against [Plaintiff] and conducting a fair Tier III hearing." (Dkt. 43-7 at 9). As noted above, Defendants' argument ignores significant inconsistencies between Defendants' declarations and the record evidence. Notably, Defendants do not address anywhere in their papers the fact that Plaintiff contends, and evidence on the record—including Attica

logbook entries (Dkt. 50-1 at 16) and Plaintiff's Tier III hearing testimony (Dkt. 43-11 at 20)—supports Plaintiff's contention that he was placed in the SHU on October 14, 2021, the same day that the letters were provided to Ms. Obermiller.  Such placement in the SHU on October 14 would have been before any charges were imposed and before Defendant Spengler's investigation and review of the audio and video recordings which he contends demonstrate that Plaintiff was attempting to surreptitiously persuade Ms. Obermiller to copy the documents.  This timeline also contradicts Defendant Spengler's declaration that states that Plaintiff was placed in SHU by him on October 16, 2021, the date he completed the misbehavior report.  These inconsistencies coupled with the Third Department's vindication of Plaintiff on the demonstration charge, *see Williams v. Annucci*, 211 A.D.3d 1222, 1222 (2022) ("[T]he record lacks substantial evidence to support the charge of attempting to organize a demonstration and it must be annulled."), and declarations from Plaintiff and Donald White indicating that they were told during their escort to the SHU on October 14th that the placement was the result of the letters to DOCCS' officials, buttress Plaintiff's showing of a causal connection.

Moreover, the fact that Defendants did not know Plaintiff before this incident or that any complaints advanced in the seized letters were about Attica personnel other than Defendants does not preclude a finding of causation for a § 1983 retaliation claim.  *Mack v. Wood*, No. 9:17-CV-1146(BKS/ATB), 2019 WL 5197230, at *6 (N.D.N.Y. July 26, 2019) (While "[a]s a general matter, it is difficult to establish one defendant's retaliation for complaints against other correctional officers," "this general rule may not apply where there are indications of 'a retaliatory purpose—i.e., that the [officer's conduct] was meant

to penalize [the plaintiff] for bringing past grievances, and to dissuade future grievances.'" (internal quotations omitted)), *adopted*, 2019 WL 4183894 (N.D.N.Y. Sept. 4, 2019); *see also Moreau v. Ellsworth*, No. 9:20-CV-124 (DNH/ATB), 2021 WL 3813172, at *11 (N.D.N.Y. July 15, 2021) ("while a plaintiff who 'alleges retaliatory adverse action by one officer for a grievance filed against another officer . . . faces a heightened burden of establishing a causal connection,' this does not necessarily bar a retaliation claim where there are indications of 'a retaliatory purpose'") (quoting *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 338-39 (S.D.N.Y. 2015)), *adopted*, No. 9:20-CV-124, 2021 WL 3793772 (N.D.N.Y. Aug. 26, 2021).

In sum, the Court cannot conclude as a matter of law that Plaintiff's protected activity could not have been a substantial or motivating factor in the punishment he received when genuine issues of material fact exist as to the circumstances surrounding Plaintiff's placement in the SHU and the punishment seemingly preceded any investigation or charges being imposed. In other words, while there may be a reasonable explanation for the discrepancies identified that do not ultimately support a claim for retaliation, the existence of these factual questions precludes the Court from making a conclusive determination on a summary judgment motion.

Accordingly, Defendants' motion for summary judgment on Plaintiff's retaliation claims as to Defendants Spengler, Kaczmarek, and Hill is denied.

## D.   **Plaintiff's Due Process Claims**

Defendants also argue that they are entitled to summary judgment on Plaintiff's Fourteenth Amendment Due Process claims because Plaintiff "received due process under

the law throughout these proceedings." (Dkt. 43-7 at 10). Plaintiff's due process challenges arise from "the retaliatory intent of the misbehavior report," the denial of his request to call witnesses, and "failure to provide advance written notice of the charges." (Dkt. 9 at 10).

"To establish a due process violation of the Fourteenth Amendment, an inmate must show that a government official made a deliberate decision to deprive him of his life, liberty, or property. Merely negligent conduct does not give rise to claims under the Fourteenth Amendment." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (citations omitted). "The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell*, 418 U.S. 539, 564-69 (1974)." *Graham v. Peters*, No. 13-CV-705JTC, 2013 WL 5924727, at *2 (W.D.N.Y. Oct. 31, 2013). The constitutionally mandated due process requirements include: "(1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense." *Id.*

A threshold problem with Plaintiff's due process claims is the lack of evidence establishing the deprivation of a cognizable liberty interest. *Seabrook v. City of New York*, No. 24-CV-2029 (PKC), 2025 WL 2223028, at *8 (S.D.N.Y. Aug. 4, 2025) ("To succeed on either a substantive or procedural due process claim, a plaintiff must first establish that

- 17 -

he enjoyed a protected liberty interest. "). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In making this assessment, courts must consider, "among other things, the duration and conditions of confinement." *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (citation omitted). "While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*." *Mena v. New York*, No. 9:24-CV-1145 (AJB/DJS), 2025 WL 1638032, at *8 (N.D.N.Y. June 10, 2025) (citing *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000)). "Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* . . . , the Second Circuit generally takes the position that disciplinary confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under 'normal conditions.'" *Id.* (quotation and citation omitted); *see also Toliver v. Fischer*, No. 9:12-CV-77 (MAD/ATB), 2016 WL 3351974, at *8 (N.D.N.Y. Mar. 22, 2016) ("SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." (quoting *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004))), *adopted* 2016 WL 3349316 (N.D.N.Y. June 15, 2016); *Cisse v. Bishop*, No. 9:22-CV-156 (TJM/MJK), 2025 WL 935237, at *12 (N.D.N.Y. Feb. 26, 2025) ("Although the

Second Circuit has avoided 'a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights,' (*Palmer*, 364 F.3d at 65), confinement for 101 days or fewer 'generally do[es] not constitute "atypical" conditions of confinement.'" (quoting *Bunting v. Nagy*, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006)), *report and recommendation adopted*, 2025 WL 931981 (N.D.N.Y. Mar. 27, 2025). Although Plaintiff contends that he experienced "abusive treatment by staff" during his 90 days in the SHU, this conclusory allegation does not rise to the level of demonstrating atypical conditions of confinement, which alone is fatal to Plaintiff's due process claims.

But even assuming Plaintiff possessed a liberty interest, his due process claims are insufficient. To the extent that Plaintiff asserts a substantive due process challenge, the factual basis for this claim is duplicative of his retaliation claims. *See Henderson v. Popp*, No. 9:22-CV-0242 (AMN/MJK), 2025 WL 1033853, at *24 (N.D.N.Y. Mar. 4, 2025) ("In this case, Plaintiff's Fourteenth Amendment substantive due process claims against Defendants . . . are entirely duplicative of his First Amendment retaliation claims, and therefore the Court recommends that the substantive due process claims be dismissed as against these Defendants."), *report and recommendation adopted*, 2025 WL 942801 (N.D.N.Y. Mar. 28, 2025), *aff'd*, 2025 WL 1427876 (N.D.N.Y. May 19, 2025); *Harnage v. Brighthaupt*, 168 F. Supp. 3d 400, 409 (D. Conn. 2016) ("Here, Harnage has alleged a First Amendment retaliation claim based on the same action raised in the due process claim, i.e. Hogan's issuance of a disciplinary report for violation of rules for outgoing mail. 'Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more

generalized notion of substantive due process, must be the guide for analyzing[] such a claim.' *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal citation and quotation marks omitted). Because the First Amendment provides protection against the type of behavior alleged by Harnage, his substantive due process claim is not cognizable."), *aff'd*, 720 F. App'x 79 (2d Cir. 2018); *Kasprzycki v. DiCarlo*, 584 F. Supp. 2d 470, 478 (D. Conn. 2008) ("The Supreme Court has held that: 'where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of "substantive due process" must be the guide analyzing these claims.'" (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 599 (2d Cir. 1999))). Summary judgment on Plaintiff's substantive due process claims is accordingly warranted.

In addition, Plaintiff's procedural due process claims also lack sufficient support to survive summary judgment. "Since *Wolff*, the Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'" *Cisse*, 2025 WL 935237, at *13 (quoting *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004)). "This standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling." *Id.*

While Plaintiff challenges the underlying motivation behind the witness testimony presented at the hearing and alleged bias of the participants, a review of the hearing transcript demonstrates that objective evidence was presented at the hearing to support the charges against Plaintiff. (Dkt. 43-11). In addition to Defendant Spengler's testimony, which was consistent with the information contained in the misbehavior report he authored,

other documents and information were presented that substantiated the charges against Plaintiff, and as noted, the Third Department upheld two of the charges. *Williams*, 211 A.D.3d at 1223 ("Petitioner was not charged based upon the actual contents of the letters but, rather, for the manner and conduct in which he, in concert with the IILC president, attempted to insert letters among a stack of IILC documents in order to deceive the office assistant into making copies."); *see also Wright-El v. Bishop*, No. 9:21-CV-1082 (LEK/DJS), 2024 WL 3298961, at *6 (N.D.N.Y. May 14, 2024) ("The 'some evidence' standard is satisfied when hearing testimony was consistent with the written misbehavior report."), *report and recommendation adopted*, 2024 WL 3219063 (N.D.N.Y. June 28, 2024); *Purcelle v. Thomas*, No. 9:18-CV-77 (GLS/TWD), 2020 WL 1516421, at *14 (N.D.N.Y. Mar. 6, 2020) ("As [the defendant-hearing officer] relied on testimony from an officer present for the incident, his determination was supported by 'some evidence' and did not violate [the p]laintiff's due process rights.").[2]  Further, Plaintiff was offered and rejected the assistance from an employee assistant.  (Dkt. 43-11 at 3).

To the extent that Plaintiff's due process claim arises from the denial of his right to call witnesses, it is well-established that an inmate's right to call witnesses is circumscribed by the potential for interference with the daily operations of the correctional institution. *See, e.g.*, *Gilbert v. Selsky*, 867 F. Supp. 159, 165 (S.D.N.Y. 1994).  Therefore, "'[p]rison

---

[2]    Although the Court has concluded that there are inconsistencies between the declarations of Defendants submitted in support of summary judgment and other evidence of record which create genuine issues of material fact sufficient to sustain Plaintiff's retaliation claim, those inconsistencies were either not before the hearing officer or do not conflict with the Court's conclusion that sufficient objective evidence was presented to satisfy due process at Plaintiff's Tier III hearing.

officials must have the necessary discretion to keep the hearing within reasonable limits'
by refusing to call witnesses, 'whether it be for irrelevance, lack of necessity, or the hazards
presented in individual cases.'" *Id.* (quoting *Wolff*, 418 U.S. at 566); *Kingsley v. Bureau of
Prisons*, 937 F.2d 26, 30 (2d Cir. 1991) ("a prisoner's request for a witness can be denied
on the basis of irrelevance or lack of necessity").

Here, Defendant Hill explained his decision not to call Deputy Commissioner
O'Gorman, who retired from DOCCS prior to the hearing or Executive Deputy
Commissioner Martuscello, who was a high level DOCCS official with no personal
knowledge relating to the charges. (Dkt. 43-11 at 20-23); *see also Parker v. Donnelly*, No.
9:21-CV-130 (LEK/ATB), 2022 WL 7290103, at *10 (N.D.N.Y. July 15, 2022) ("In
exercising his discretion to exclude evidence from a disciplinary hearing, a prison official
must 'explain, in a limited manner, the reason why witnesses were not allowed to
testify. . . .'" (quoting *Brooks v. Prack*, 77 F. Supp. 3d 301, 318 (W.D.N.Y. 2014))), *report
and recommendation adopted*, No. 9:21-CV-00130 (LEK/ATB), 2022 WL 4181571
(N.D.N.Y. Sept. 13, 2022). These explanations were reasonable and satisfied due process.

Finally, although Plaintiff challenges his receipt of advance written notice of the
charges, a review of the hearing transcript demonstrates that Plaintiff conceded that he did
ultimately receive notice of the charges. (Dkt. 43-11 at 3). In order to constitute a
procedural due process violation, a plaintiff "must show that he was prejudiced by the
alleged procedural errors, in the sense that the errors affected the outcome of the hearing."
*Zimmerman v. Pautz*, No. 12-CV-00763A(F), 2020 WL 13358554, at *16 (W.D.N.Y. June

2, 2020), *report and recommendation adopted*, No. 12-CV-763-A, 2022 WL 1401252 (W.D.N.Y. May 4, 2022). No such showing has been made here.

Accordingly, there being no evidence before the Court to establish that any of Plaintiff's alleged procedural objections affected the outcome of the hearing, Plaintiff's procedural due process claim also cannot stand. Defendants' motion for summary judgment on Plaintiff's due process claims is accordingly granted.

## E.    <u>Qualified Immunity</u>

Defendants also argue that they are entitled to qualified immunity as an alternative ground in support of their summary judgment motion. (Dkt. 43-7 at 12-13). "Qualified immunity insulates public officials from claims for damages where their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Defore v. Premore*, 86 F.3d 48, 50 (2d Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

As for Plaintiff's due process claims, because the Court concludes that Plaintiff has not established a constitutional violation, the Court need not consider the applicability of the qualified immunity defense to those claims. *See Smith v. Sullivan*, No. 9:20-CV-659 (DNH/CFH), 2023 WL 3727447, at *19 (N.D.N.Y. May 3, 2023) ("Here, the Court need not address qualified immunity as an alternative ground to [the] defendants' summary judgment motion because [the] plaintiff has not established a dispute of material fact as to whether [the] defendants violated his constitutional rights."), *report and recommendation adopted*, 2023 WL 3722137 (N.D.N.Y. May 30, 2023).

And because the Court concludes that there remain genuine issues of material fact underlying Plaintiff's retaliation claim, the Court cannot determine as a matter of law whether Defendants are entitled to qualified immunity on this claim.  *See Zwick v. Town of Cheektowaga*, No. 17-CV-00727 (FPG), 2021 WL 4895106, at *6 n.7 (W.D.N.Y. Oct. 20, 2021) ("[G]iven the existence of a genuine issue of material fact, the Court will not address the viability of any qualified-immunity defense." (citing *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).  In other words, Defendants' arguments in support of qualified immunity—which generously could be characterized as cursory—rest on an acceptance of their version of events (*see* Dkt. 43-7 at 12-13), but as detailed above, issues of fact exist as to the reliability of Defendants' story.  For the same reasons, qualified immunity cannot be determined as a matter of law on the retaliation claim.

II.    **Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction**

"Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies, which are 'never awarded as of right,' or 'as a routine matter.'"  *See Rush v. Hillside Buffalo, LLC*, 314 F. Supp. 3d 477, 483-84 (W.D.N.Y. 2018) (quoting *Whitfield v. Lopez*, No. 15-CV-4827 (DLI) (LB), 2015 WL 6128866, at *2 (E.D.N.Y. Oct. 16, 2015) (citations omitted)).  "In the Second Circuit, the standard for issuance of a temporary restraining order . . . is the same as for a preliminary injunction."  *Petroleum Mktg. Grp., Inc. v. Express Farm, Inc.*, No. 8:19-CV-1256, 2019 WL 5191528, at *1 (N.D.N.Y. Oct. 15, 2019) (quoting *Fairfield Cnty. Med. Ass'n v. United Healthcare of New England*, 985 F. Supp. 2d 262, 270 (D. Conn. 2013), *aff'd*, 557 F. App'x 53 (2d Cir. 2014)).  A plaintiff

- 24 -

seeking a temporary restraining order or preliminary injunction must demonstrate that: (1) there is a likelihood of success on the merits; (2) he will suffer irreparable injury if relief is not granted; (3) balancing of the equities tips in favor of the moving party; and (4) entry of relief would serve the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the moving party cannot demonstrate a likelihood of success on the merits, a court may still issue a preliminary injunction if the moving party demonstrates "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). A district court "has wide discretion in determining whether to grant a preliminary injunction[.]" *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 511 (2d Cir. 2005).

Plaintiff seeks a temporary restraining order and preliminary injunction to enjoin conduct of a non-party sergeant and non-party correctional officer at Wende Correctional Facility. (Dkt. 51 at 12-20). But "a district court lacks jurisdiction to order relief where a motion for a temporary restraining order and/or preliminary injunction 'presents issues which are entirely different from those which were alleged in [the] original complaint.'" *Dennis v. K&L Gates LLP*, No. 1:20-CV-9393 (MKV), 2025 WL 1094493, at *1 (S.D.N.Y. Apr. 11, 2025) (quoting *Stewart v. INS*, 762 F.2d 193, 199 (2d Cir. 1985)). Here, the factual basis underlying Plaintiff's motion for injunctive relief is entirely different from the

allegations in his amended complaint and thus, the motion is not sufficiently related to the instant action.

Moreover, not only does the motion arise from unrelated matters, but the motion seeks injunctive relief against non-parties to this matter, and Plaintiff has not established any sound basis for the Court to exercise jurisdiction over these individuals. *See Chandler v. Graham*, No. 9:16-CV-0348 (DNH/ATB), 2016 WL 4411407, at *2 (N.D.N.Y. Aug. 19, 2016) ("To the extent that Chandler seeks injunctive relief [ordering access to law library] against unidentified correctional officers or other staff at Green Haven C.F.—who are not defendants in the present action—injunctive relief is available against non-parties only under very limited circumstances, none of which are present here." (citing Fed. R. Civ. P. 65(d)(2)); *Oliphant v. Villano*, No. 3:09cv862 (JBA), 2010 WL 5069879, at *2 (D. Conn. Dec. 3, 2010) ("[T]he Court lacks jurisdiction to enjoin the conduct of prison . . . correctional staff who are not defendants in this action.").

For these reasons, Plaintiff's motion for a temporary restraining order and preliminary injunction is denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 43) is granted in part and denied in part. Plaintiff's motion for a temporary restraining order and preliminary injunction (Dkt. 51) is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Rodriguez.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      August 21, 2025
            Rochester, New York